J-S09034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES F. PETERSON | : | |
| | : | |
| Appellant | : | No. 2023 EDA 2024 |

Appeal from the Judgment of Sentence Entered July 1, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004276-2023

BEFORE: LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED APRIL 7, 2025**

Appellant, James F. Peterson, appeals from the Judgment of Sentence Entered on July 1, 2024, in the Court of Common Pleas of Delaware County following his conviction at a non-jury trial on the charge of driving while under the influence ("DUI") of alcohol: general impairment / incapable of driving safely.[1] After careful review, we affirm.

The relevant facts and procedural history are as follows: Following his arrest on June 1, 2023, Appellant, who was represented by counsel, proceeded to a non-jury trial on June 13, 2024.

At trial, Officer Justin Major of the Media Borough Police Department testified that On June 1, 2023, at 2:48 A.M., his department had been notified

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(a)(1).

of a male sleeping behind the wheel of a vehicle stopped at 6 State Road in Media. N.T., 6/13/24, at 7. The officer and his partner responded, and upon arrival observed a 2011 gold Chevy Malibu parked between the roadway and the entrance of a parking lot servicing several closed businesses. The vehicle was parked parallel to the roadway and perpendicular to the parking spaces in the lot. The vehicle's engine was turned off, but the hood and quarter panel of the driver's side were warm to the touch. *Id.* at 7-12. The vehicle's front and rear lights were on, and the keys were left in the ignition. *Id.*

Officer Major observed Appellant asleep in the driver's seat of the vehicle, with his head slumped towards the floor. The Officers attempted to speak with Appellant through the window of his vehicle, but they were unable to rouse him until they had struck the window several times. *Id.* at 12. Upon waking, Appellant stared blankly at the officers for thirty seconds while the officers attempted to get Appellant to open the vehicle's door. *Id.* at 13. Appellant then reached for the gear shift, which prompted the officers to open the door themselves. Upon opening the door, the officers smelled alcohol emanating from the interior driver's side of the vehicle. *Id.* at 13, 15.

Once the door had been opened, the Officers began speaking with the Appellant. Officer Major testified that Appellant appeared confused, and he was slow to respond to questions. Appellant's responses were unclear and fragmented. Further, Appellant gave multiple contradictory statements regarding his activities earlier that evening. First, Appellant said he was going to work, but then later stated that he was coming home from work, before

- 2 -

finally telling the officers he did not have work that day, "he was going out from home." *Id.* at 14. Officer Major noted that Appellant's eyes were glassy, yellowed, and bloodshot. His movements were slow and exaggerated, and Appellant needed to use the exterior of the vehicle to maintain his balance. As Appellant walked alongside the vehicle, Officer Major noted Appellant's gait was unsteady, and Appellant spent two minutes tucking in his shirt. *Id.* at 15-16.

Officer Major then administered Field Sobriety Tests including the Walk and Turn test, and the One-legged Stand test. Both tests yielded multiple clues of impairment. Upon request, Appellant consented to a Preliminary Breath Test ("PBT"), but he immediately thereafter became uncooperative and repeatedly turned away from the machine, allowing Officer Major to collect only an abbreviated sample.

Appellant was subsequently arrested. Officer Major attempted to read Appellant the DL-26B form regarding chemical testing, but Appellant repeatedly spoke and shouted over the officer. He would not respond to the request for consent. Officer Major deemed said conduct a denial of consent. At trial, Officer Major offered his opinion that Appellant was under the influence of alcohol to a degree that he was unable to drive safely. *Id.* at 25.

Appellant elected to take the stand at trial, and he testified that on the evening in question he was on his way home from a prayer meeting in Philadelphia, having left his church between 11:00 P.M. and 12:00 A.M. Appellant stated he drank a vitamin drink while driving. Appellant testified

- 3 -

that when he had taken this vitamin drink in the past, it had made him more energetic. However, Appellant reported that on this occasion he took more than his usual dose, and he was rendered drowsy and disoriented. *Id.* at 46. Upon experiencing this disorienting effect, Appellant pulled over and parked where the officers found his vehicle.

A bottle of this vitamin drink was offered into evidence at trial. *Id.* at 36. The label lists among the drink's ingredients "dexpanthenol." *Id.* at 41. Upon request of Appellant's trial counsel, the trial court took judicial notice of the fact that dexpanthenol is an "alcohol analog," and is an "alcohol derivative." *Id.*[2] Mr. Peterson testified that he did not read any warning labels on the vitamin drink; upon inspection at trial, it was noted that one such warning advised that the drink may cause drowsiness. *Id.* at 52. Appellant was prompted to smell the bottle during his testimony, and he stated "[i]t has a strong odor." *Id.* at 39. The attorney for the Commonwealth and trial court were also prompted to smell the bottle, at which time the Court noted "let the record reflect […] it doesn't smell like alcohol typically to me. It has a very strong vitamin smell," which the Court clarified "is like an iron smell." *Id.* at 56.

_____

[2] Appellant's trial counsel did not ask the trial court to take judicial notice of any properties or clinical effects of dexpanthenol. No expert testimony was adduced addressing the same. When asked whether dexpanthenol could affect the result of the attempted PBT, Officer Major responded "I'm unsure." *Id.* at 59-60.

- 4 -

At the conclusion of the non-jury trial, the trial court found Appellant guilty of DUI: general impairment / incapable of driving safely pursuant to 75 Pa.C.S.A. § 3802(a)(1). On July 1, 2024, Appellant was sentenced to a term of six months' probation with the first 30 days on house arrest with electronic monitoring, and a $500.00 fine was imposed. Appellant timely filed his Notice of Appeal on July 30, 2024.

Appellant sets forth the following sole issue in his Statement of Matters Complained of on Appeal:

> Whether the evidence was sufficient to sustain the sole charge of driving under the influence of alcohol to a degree which rendered Appellant incapable of safely driving where the Commonwealth failed to prove beyond a reasonable doubt that Appellant intentionally ingested any alcohol which caused him to drive unsafely?

**Appellant's brief** at 4.

While in the argument portion of his brief, Appellant alleges the evidence was insufficient to sustain his DUI conviction under § 3802(a)(1), this Court agrees with the sound assessment of the trial court: "[t]he real crux of [Appellant's] argument is that the Commonwealth did not prove that the vitamin drink Appellant consumed contained alcohol." Trial Court Opinion, filed 9/27/24, at 6. Appellant's argument on that point is therefore without merit, as proving that allegation was not incumbent upon the Commonwealth.

This Court's standard of review when considering a challenge to the sufficiency of the evidence requires us to look at the evidence in the light most favorable to the Commonwealth as the verdict winner, and to determine

whether the evidence presented, both actual and circumstantial, was sufficient to enable a fact-finder to find every element of the crime charged beyond a reasonable doubt. *See Commonwealth v. O'Brien*, 939 A.2d 912 (Pa.Super. 2007).

> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Id.* at 913-914 (quotation omitted).

Further, the trial court, as the finder of fact, is free to believe all, some, or none of the evidence presented and is free to determine the credibility of the witnesses. *Commonwealth v. Dailey*, 828 A.2d 356 (Pa.Super. 2003). In conducting a review of the sufficiency of the evidence, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder's. *Commonwealth v. Baumgartner*, 206 A.3d 11, 14-15 (Pa.Super. 2019).

In the case *sub judice*, Appellant challenges his DUI conviction pursuant to 75 Pa.C.S.A. § 3802(a)(1). The relevant statutory provision provides as follows:

**§ 3802. Driving under influence of alcohol or controlled substance**

**(a)  General impairment. –**

- 6 -

> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1) (bold in original).

In order to sustain a conviction under § 3802(a)(1), the Commonwealth must prove beyond a reasonable doubt two elements: "(1) the defendant was operating a motor vehicle, (2) after imbibing a sufficient amount of alcohol such that the individual was rendered incapable of safely operating the motor vehicle." **Commonwealth v. Segida**, 985 A.2d 871, 876 (Pa. 2009).

> Regarding the first element, this Court has previously held:
>
> The term "operate" requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle. Courts review a combination of the following factors to determine whether a person had "actual physical control" of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. A determination of actual physical control of a vehicle is based upon the totality of the circumstances.

**Commonwealth v. Fallon**, 275 A.3d 1099, 1105 (Pa.Super. 2022) (citations omitted).

The second element is satisfied where alcohol has "substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react

- 7 -

prudently to changing circumstances and conditions." ***Commonwealth v. Palmer***, 751 A.2d 223, 228 (Pa.Super. 2000). Evidence which may be proffered regarding the second element includes, but is not limited to "the offender's actions and behavior, including manner of driving[;]…demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other signs of intoxication; odor of alcohol, and slurred speech." ***Segida***, 985 A.2d at 879. Refusal of chemical testing may also be considered as evidence showing consciousness of guilt. 75 Pa.C.S.A. § 1547(e); ***Commonwealth v. Carabello***, 325 A.3d 1025, 1031 (Pa.Super. 2024).

To the extent Appellant invites this Court to read a *mens rea* element into § 3802(a)(1), we decline to do so. DUI: general impairment / incapable of driving safely is a strict liability offense, and as such the Commonwealth bears no burden of demonstrating that Appellant imbibed alcohol intentionally or knowingly. ***Commonwealth v. Collins***, 810 A.2d 698, 702 (Pa.Super. 2002) ("[T]he statute does not make use of the terms 'intentionally,' 'knowingly' or 'willfully.' Therefore, the Commonwealth was not required to prove that [the appellant's] intoxication was intentional or voluntary.") (citations omitted)).

Following our well-established standard of review, we find that the Commonwealth presented sufficient evidence to support Appellant's DUI conviction.

To the first element, the evidence readily demonstrates that Appellant was operating or in actual physical control of his vehicle at the time in question. Appellant was found alone in his vehicle, sitting in the driver's seat. His keys were in the ignition, the vehicle's front and rear lights were on, and the hood and front quarter panel on the driver's side were warm to the touch. When roused, Appellant moved his hand to the gear shift of the vehicle. Further, Appellant admitted both to the officers at the scene, and during his testimony at trial, that he had driven the vehicle to where the officers had found it, and himself. Taken together, these facts sufficiently establish the conclusion that Appellant was operating or in actual physical control of his vehicle.

Likewise, the Commonwealth's evidence of impairment by alcohol was sufficient. Appellant's vehicle was found parked in a peculiar manner, between the road and a parking lot – parallel to the road, and perpendicular to the parking spots. Appellant was asleep when officers first encountered him, and he was difficult to rouse. The interior driver's side of the vehicle, where Appellant had been seated, smelled strongly of alcohol, and Appellant was manifestly impaired. Appellant's eyes were glossy, yellowed, and bloodshot. Further, his speech was slow, halting, and slurred. His gait was unsteady, and the officers observed him using the exterior of his vehicle for balance. He demonstrated multiple clues of impairment during the walk-and-turn, and the one-legged stand field sobriety tests. Appellant gave multiple contradictory

statements regarding his activities on the night in question, and he then gave an additional contradictory version of events at trial. Appellant was belligerent to and uncooperative with the officers. For example, although Appellant initially consented to the PBT, he immediately refused to follow instructions, thereby allowing for only an abbreviated sample to be collected by the PBT. Appellant then continued to speak over, and eventually shout over, the officer attempting to read him the DL-26B form, which constituted refusal to submit to chemical testing. Further, at trial, Appellant admitted that he pulled over his vehicle because he was feeling drowsy and "like [he] could not physically move the vehicle." N.T., 6/13/24, at 45. The smell of alcohol, Appellant's manifest impairment, his own admission of being unable to operate his vehicle while driving, and refusal of consent to chemical tests of his breath allowed the trial court to reasonably conclude, beyond a reasonable doubt, that Appellant was indeed under the influence of alcohol to a degree which rendered him incapable of safely operating his vehicle.

Wherefore, the evidence presented by the Commonwealth was sufficient to sustain Appellant's conviction as to both elements of DUI: general impairment / incapable of driving safely.

That Appellant contended at trial, and maintains in his brief, that the only substance he consumed on the night in question was the vitamin drink is of no moment. As noted above, the trial court is permitted to believe all, some, or none of the evidence presented and is free to determine the credibility of

the witnesses. **Dailey**, **supra**. Therefore, the court was under no obligation to accept Appellant's representations, and in turn the Commonwealth was under no obligation to prove the contents of that particular drink.[3] Certainly, This Court is no more bound to believe Appellant than was the trial court; in point of fact, we are precluded from substituting our judgment on the credibility of Appellant's assertion for the trial court's. **O'Brien**, **supra**.

To the extent Appellant invites this Court to review the credibility assessments of the trial court, as discussed above, such review is improper. As the Commonwealth astutely argued in its brief, challenges to sufficiency and challenges to weight are discrete claims, and challenges to the credibility determinations of the trial court go to the weight of the evidence. Commonwealth's Brief at 10 (citing **Commonwealth v. Bowen**, 55 A.3d 1254, 1262 (Pa.Super. 2012)). Appellant did not preserve a challenge to the weight of the evidence, and, therefore, any claim related thereto is waived. **See** Pa.R.Crim.P. 607; **Commonwealth v. Widmer**, 689 A.2d 211 (Pa. 1997); and **Commonwealth v. Brown**, 648 A.2d 1177, 1189-1192 (Pa. 1994).

_____

[3] This is especially true where the evidence, particularly the strong smell of alcohol emanating from the interior driver's side of Appellant's vehicle, taken together with the trial court's recorded observation that the vitamin drink did **not** smell like alcohol, seriously undermines Appellant's proposed intoxication-by-vitamin theory of the case.

However, even assuming, *arguendo*, that Appellant properly preserved a challenge to the weight of the evidence and subsequently presented that question on appeal, the facts herein would not merit a new trial.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Landis*, 277 A.3d 1172, 1183-84 (Pa.Super. 2022) (citations omitted). To prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa.Super. 2015) (citation omitted).

After careful consideration of the evidence of record in the instant matter, and review of the trial court's well-reasoned opinion, the conscience of this Court is not disturbed by the verdict.

For all the aforementioned reasons, we conclude the evidence was sufficient to sustain Appellant's DUI conviction under § 3802(a)(1). We must decline, and do decline, to reweigh the evidence or to disturb the sound judgment of the trial court. Accordingly, we find no merit to Appellant's issues presented on appeal, and we affirm his judgment of sentence.

Judgement of Sentence Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/7/2025</u>